BAILES, Judge.
This concursus proceeding was convoked by Advance, Inc., (Advance) owner of a real estate development known as Vista Park Subdivision in East, Baton Rouge Parish, Louisiana, to bring about the final payment due on the building contract which it entered into with Harris-Smith Corporation (Harris-Smith). At the time of the convocation of this proceeding two liens were of record against Advance’s property, these being the claim of Pelican State Lime Company in the amount of $2,019.60, and the claim of Continental *344 Engineers, Inc. (Continental), in the amount of $59,189.90. The balance due on the above mentioned contract was the sum of $23,974.41, and this is the amount which Advance was permitted to file in the registry of the court. The surety on the performance bond of Harris-Smith, The Fidelity & Casualty Company of New York (F & C), who had previously obtained a judgment against Harris-Smith in the amount of $42,270.06, also claimed this fund under the proceedings initiated by it against Harris-Smith in the companion suit entitled The Fidelity & Casualty Co. of New York v. Harris-Smith, Inc., No. 7274 on the docket of this Court and decided this date. See 211 So.2d 339.
Harris-Smith, F & C, Pelican State Lime Corporation and Continental were cited to assert whatever claim they have to the fund. Subsequently, and before trial, F & C paid the claim of Pelican State Lime Corporation. Harris-Smith made no appearance herein. Thus, this litigation involves a dispute between F & C and Continental to the concursus fund.
. The answer of F & C is tantamount to a general denial that Continental has any claim to the concursus fund, and further alleges that there was no contractual relationship between Advance and Continental. The answer of Continental alleges that Continental entered into a contract with Harris-Smith for the completion of the work contracted between Advance and Harris-Smith, and that the unpaid balance due Continental on this subcontract is $37,544.27. By third party petition, Continental sued F & C for the difference between the balance it contends is owed and the amount of the fund deposited by Advance. However, no judgment was rendered in the third party proceedings and that matter is not before us herein.
After trial, the court a quo rendered judgment in favor of F & C in which F & C was decreed entitled to the con-cursus fund. Continental appealed from this adverse judgment.
The position taken by F & C at the trial of this matter was that the sub-contract from Harris-Smith to Continental was not an arms length transaction. They argued that Harris-Smith and Continental were corporations in name only and were, in fact, only business names for three individuals working the Park-Vista contract together. Accordingly, they contended that Continental was not a true sub-contractor but merely an extension, or alter ego, of Harris-Smith or the individuals forming it and therefore, had no valid claim to the concursus fund. In support of this contention F & C attempted to introduce evidence to prove this fraudulent connection. Objection was made by Continental to the introduction of any such evidence since no allegation of fraud was made in F & C’s answer to the concursus. After the objection was overruled it was renewed and made general. In rendering judgment in favor of F & C the trial court gave no reasons for judgment. We are, therefore, unaware of the basis on which the judgment was rendered but we feel that the evidence subject to the objection must have been considered.
Appellant argues that the court erred in admitting evidence to support a proof of fraud in the absence of specifically pleaded allegations of fact constituting fraud. Appellee, F & C, contends that no such pleading was required under the provisions of LSA-C.C.P. Art. 4656 which characterizes each defendant in the con-cursus as both a plaintiff and a defendant with respect to all other parties and which forbids responsive pleas to answers filed by co-defendants.
That fraud is an affirmative plea, neither presumed nor imputed, is beyond question. Equally well settled is the rule that in order to reach evidence to support a proof of fraud a foundation must be laid in the pleadings by specifically alleging the facts which constitute the fraud. The answer made by F & C is completely devoid of any allegation which *345 even tends to intimate fraudulent activity on the part of Continental or Harris-Smith. Consideration of this evidence was erroneous.
The cases in our jurisprudence and the provisions in the Code of Civil Procedure which state, in effect, that issue need not he joined between the contestants to the concursus fund by formal pleadings but is tacitly formed between them, each being considered to deny the claim of the other, do not mean that fraud may be proved without being pleaded. Contes-tation between claimants in a concursus on any basis other than that patent on the face of dual claims to the same fund should be initiated by appropriate pleadings. In the case of fraud, there must be specific allegation of the facts which constitute this fraud. Replicatory pleas to these latent issues or contests between the concursus defendants is of course unnecessary. Any pleadings by one of the defendants in a concursus, whether in support of a claim or in opposition to the claim of another, is considered denied.
This being the case, we must now consider the claims asserted by Continental and F & C to the concursus fund. Continental’s claim was based on the subcontract it confected with Harris-Smith to complete the Park-Vista construction under which the price due for the cost of labor and material expended had not been paid. The claim asserted by F & C was founded on the indemnity clauses of the construction bond it issued to Harris-Smith and on its legal subrogation to the rights of the materialmen whose liens it paid.
The contract between Harris-Smith and Continental was introduced into evidence. It provided for two methods of payment for the work to be done by Continental. The first was based on the original Advance — Harris-Smith contract which listed and described twenty-six pay items involved in the construction and the unit price to be paid for each of the total number of units approved by the contract. This portion of the subcontract listed nine such items and Continental agreed to complete those items at the stated unit prices with final determination of actual quantities to be made by the supervising engineer. The other portion of the sub-contract provided that Continental would “ * * * prepare road-bed, muck out wet spots and replace with good material, where any curbs have been broken or mislined, repair same, clean out all drainage pipe, ditches and structures and any additional work required to complete any items constructed by Harris-Smith, Corp. at our actual cost plus 10% for profit and overhead.”
By comparison of the stage completion estimates submitted by the supervising engineer to Advance approving a stage payment at the time Continental took over the construction and the final estimate of the work done the amount of the construction completed by Continental was determined. The value of this work, computed under the first method provided in the subcontract, was $28,117.60. From this sum was subtracted the amount paid by F & C to materialmen which was included in the unit price computation and could not be claimed by Continental. The total paid by F & C for materials was $19,818.-27, leaving a total of $8,299.33 unpaid to Continental under the unit price payment method of the subcontract.
The claim under the cost plus 10% payment method was for $19,478.30. This portion of the claim was proved by the introduction of the Superintendent’s Daily Report of work on the project prepared by Dwight Smith and on which he listed the work done that would not fall under the unit price payment method. The Daily Report consists of time and rate per hour annotations for men and machinery and a brief description of the work done on each particular day. Mr. Smith testified and the remarks on the Daily Report show that this work consisted of the type work required by the hereinabove quoted section of the subcontract.
*346 F & C attempted to dispute this claim by showing that some of the work on which this claim is based was certified as complete by the surveying engineer before Continental began work on the project under the subcontract. Mr. Toxie Craft, the supervising engineer, testified that his stage completion estimates, on the basis of which stage payments were made by the owner to the contractor, were given and approved only after the work reflected thereon was properly completed and would require no further work. The import of this testimony was somewhat diluted, however, by Mr. Craft’s statement on cross examination that it was possible that some of the work previously approved as complete may have had to be repaired due to destruction by the passage of heavy equipment and other work in the area, and that some mucking out of the roadways was required. Furthermore, when this statement is coupled with the testimony of Mr. Smith and the fact established in the record that Continental’s assumption of the project was preceded by a long period of extremely wet weather it would appear that large amounts of refinishing or “dressing” would be required before the construction would be acceptable to the owner or the approving engineer, which work, incidentally, seems anticipated by the subcontract. We do not feel that the attack by F & C was of sufficient weight to overcome the evidence produced by Continental in support of this claim under the “cost plus” portion of the subcontract. Continental therefore has proved a claim for $27,777.63.
No allegation of fraud having been made and Continental having proved its claim, F & C is precluded from establishing a ranking claim to the fund. A surety on a construction project is liable in solido with the contractor for all labor and material used in the construction. LSA-R.S. 9:4803. Thus, the claim asserted by F & C and based on indemnification from or sub-rogation to the rights of Harris-Smith is without consequence inasmuch as F & C is liable with Harris-Smith until the claims for all labor and material have been paid. Continental’s claim is still outstanding. F & C’s right of indemnification or to subrogation is meaningless in this concur-sus unless a portion of the fund remains after Continental is satisfied.
By our holding in this.case, we are in no way implying that fraud or bad faith has been shown. To the contrary, from our minute and careful perusal of the record we are convinced that there is, in fact, no evidence of fraud or bad faith on the part of Continental.
For the foregoing reasons, the judgment appealed from in favor of The Fidelity & Casualty Company of New York is annulled, vacated and set aside, and there is judgment herein in favor of Continental Engineers, Inc., awarding it the fund deposited by Advance, Inc., in the amount of $23,974.41. Continental Engineers, Inc., is to pay all court costs incurred in this concursus proceeding.
Reversed and rendered.